**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Eric Michael Clark, | ) | No. CV 09-8006-PCT-JAT |
| Petitioner, | ) ) | **ORDER** |
| vs. | ) ) ) | |
| Charles L. Ryan; et al., | ) ) ) | |
| Respondents. | ) ) ) | |

Pending before the Court is Petitioner's amended petition for writ of habeas corpus ("Petition").  Doc. 17.[1]  The Magistrate Judge to whom this case was assigned issued a Report and Recommendation (R&R) recommending that this Court grant the Petition (on one ground).  Doc. 54.  Respondents objected to this recommendation.  Doc. 55.

**I.    Background**

The United States Supreme Court summarized the facts of this case as follows:

> In the early hours of June 21, 2000, Officer Jeffrey Moritz of the Flagstaff Police responded in uniform to complaints that a pickup truck with loud music blaring was circling a residential block. When he located the truck, the officer turned on the emergency lights and siren of his marked patrol car, which prompted petitioner Eric Clark, the truck's driver (then 17), to pull over. Officer Moritz got out of the patrol car and told Clark to stay where he was. Less than a minute later, Clark shot the officer, who died soon after but not before calling the police dispatcher for help. Clark ran away on foot but was

---

[1]   The original pro se petition (Doc. 1) was filed by Petition's family; then the amended petition was filed by counsel for Petitioner.

1    arrested later that day with gunpowder residue on his hands; the gun that killed
     the officer was found nearby, stuffed into a knit cap.

2

3    *Clark v. Arizona*, 548 U.S. 735, 743 (2006).

4         The Supreme Court went on to summary the procedural history at trial as follows:

5              Clark was charged with first-degree murder under Ariz. Rev. Stat. Ann.
          § 13–1105(A)(3) (West Supp.2005) for intentionally or knowingly killing a
6         law enforcement officer in the line of duty. [footnote omitted] In March 2001,
          Clark was found incompetent to stand trial and was committed to a state
7         hospital for treatment, but two years later the same trial court found his
          competence restored and ordered him to be tried. Clark waived his right to a
8         jury, and the case was heard by the court.

9              At trial, Clark did not contest the shooting and death, but relied on his
          undisputed paranoid schizophrenia at the time of the incident in denying that
10        he had the specific intent to shoot a law enforcement officer or knowledge that
          he was doing so, as required by the statute. Accordingly, the prosecutor
11        offered circumstantial evidence that Clark knew Officer Moritz was a law
          enforcement officer. The evidence showed that the officer was in uniform at
12        the time, that he caught up with Clark in a marked police car with emergency
          lights and siren going, and that Clark acknowledged the symbols of police
13        authority and stopped. The testimony for the prosecution indicated that Clark
          had intentionally lured an officer to the scene to kill him, having told some
14        people a few weeks before the incident that he wanted to shoot police officers.
          At the close of the State's evidence, the trial court denied Clark's motion for
15        judgment of acquittal for failure to prove intent to kill a law enforcement
          officer or knowledge that Officer Moritz was a law enforcement officer.

16

17   *Id.* at 743-44.

18        As the R&R recounts, following trial, Petitioner appealed to the Arizona Court of

19   Appeals, which affirmed the conviction and sentence. Doc. 54 at 4 (citing Doc. 33-3 at 178-

20   198). The Arizona Supreme Court denied review. *Id*. The United States Supreme Court

21   granted review and affirmed the conviction and sentence. *Id*. Petitioner then filed a petition

22   for post-conviction relief in the state court. *Id*. at 4-5. The post-conviction relief court

23   denied the petition. *Id*. at 5. The Arizona Court of Appeals and the Arizona Supreme Court

24   both denied the petitions for review of the post-conviction relief court's decision. *Id*. This

25   habeas petition was then timely filed in federal court.

26   **II.    Review of Report and Recommendation**

27        This Court "may accept, reject, or modify, in whole or in part, the findings or

28
                                              - 2 -

1    recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  It is "clear that the

2    district judge must review the magistrate judge's findings and recommendations *de novo if*

3    *objection is made*, but not otherwise."  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

4    (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F.Supp.2d 1219,

5    1226 (D.Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of

6    factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath*

7    *Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009)

8    (the district court "must review de novo the portions of the [Magistrate Judge's]

9    recommendations to which the parties object.").  District courts are not required to conduct

10   "any review at all . . . *of any issue* that is not the subject of an objection."  *Thomas v. Arn*,

11   474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("the court shall

12   make a *de novo* determination of those portions of the [report and recommendation] to which

13   objection is made.").

14          In this case, Petitioner did not file any objections to the portions of the R&R which

15   recommended that the Petition be denied on Grounds I-IV and VI-VII.  Accordingly, the

16   Court will accept and adopt the R&R on these grounds (except as noted in footnote 3), and

17   deny the Petition.  As to Ground V's ineffective assistance of counsel theory, the R&R

18   recommended that this Court grant relief and Respondents objected.  Accordingly, the Court

19   will review Ground V de novo.

20          **III.    Analysis**

21                 **A.    Summary of Claims**

22          Ground V is an ineffective assistance of trial counsel claim.  Summarizing the claim

23   on which the R&R recommends this Court grant relief, Petitioner claims his trial counsel was

24   ineffective for failing to raise/preserve an "observation evidence" as a defense to *mens rea*

25   claim. Doc. 17 at 67.  In support of this theory of ineffective assistance of counsel, Petitioner

26   points to the fact that the Supreme Court held that counsel did not preserve this claim of

27   error/objection.  *Id*.; *see also Clark*, 548 U.S. at 760-764.

28

1    With regard to the direct appeal, the Arizona Court of Appeals identified the issue as

2 whether evidence of mental disease or defect could be considered by the trier of fact to

3 negate the requisite *mens rea* for first degree murder.  Doc. 33-3 at 195.  The Arizona Court

4 of Appeals appeared to hold that the trier of fact could not consider such evidence under

5 Arizona law stating, "the trial court was bound by the supreme court's decision in *Mott*,

6 which held that, 'Arizona does not allow evidence of a defendant's mental disorder short of

7 insanity either as an affirmative defense or to negate the *mens rea* element of a crime.'" *Id*.

8 at 196 (citing *State v. Mott*, 931 P.2d 1046 (1997)).  Nonetheless, the Arizona Court of

9 Appeals alternatively noted that the trial court did not prevent counsel from presenting such

10 evidence, and that counsel presented no evidence beyond the evidence offered to prove

11 insanity that would have shown Clark could not form the "knowingly" *mens rea*. *Id*. at 195-

12 96.

13    On appeal, the United States Supreme Court summarized this issue and evidence as

14 follows:

15    Clark's second claim of a due process violation challenges the rule
     adopted by the Supreme Court of Arizona in *State v. Mott*, 931 P.2d 1046, cert.

16   denied, 520 U.S. 1234 (1997).  This case ruled on the admissibility of
     testimony form a psychologist offered to show that the defendant suffered

17   from battered women's syndrome and therefore lacked the capacity to form the
     *mens rea* of the crime charged against her. ...  The state court held that

18   testimony of a professional psychologist or psychiatrist about a defendant's
     mental incapacity owing to mental disease or defect was admissible, and could

19   be considered, only for its bearing on an insanity defense; such evidence could
     not be considered on the element of *mens rea*, that is, what the State must

20   show about a defendant's mental state (such as intent or understanding) when
     he performed the act charged against him....

21
       Understanding Clark's claim requires attention to the categories of

22   evidence with a potential bearing on *mens rea*.  First, there is "observation
     evidence" in the everyday sense, testimony from those who observed what

23   Clark did and heard what he said; this category would also include testimony
     that an expert witness might give about Clark's tendency to think in a certain

24   way and his behavioral characteristics. ...

25       Second, there is "mental-disease evidence" in the form of opinion
     testimony that Clerk suffered from a mental disease with features described by

26   the witness. ...

27       Third, there is evidence we will refer to as "capacity evidence" about

28                                    - 4 -

1    a defendant's capacity for cognition and moral judgment (and ultimately also
     his capacity to form *mens rea*).
2

3    *Clark*, 548 U.S. at 756-59.

4    The Supreme Court then went on to hold,

5           It is clear that *Mott* itself imposed no restriction on considering
     evidence of the first sort, the observation evidence.  We read the *Mott*
6    restriction to apply, rather, to evidence addressing the two issues in testimony
     that characteristically comes only from psychologists or psychiatrists qualified
7    to give opinions as expert witnesses: mental-disease evidence (whether at the
     time of the crime a defendant suffered from a mental disease or defect, such
8    as schizophrenia) and capacity evidence (whether the disease or defect left him
     incapable of performing or experiencing a mental process defined as necessary
9    for sanity such as appreciating the nature and quality of his act and knowing
     that it was wrong).
10
            *Mott* was careful to distinguish this kind of opinion evidence from
11   observation evidence generally and even from observation evidence that an
     expert might offer, such as descriptions of a defendant's tendency to
12   think in a ceratin way or his behavioral characteristics; the Arizona court made
     it clear that this sort of testimony was perfectly admissible to rebut the
13   prosecution's evidence of *mens rea*, ... .

14   *Id*. at 760.

15   With respect to counsel's preservation of this observation evidence claim, the

16   Supreme Court stated, "For the following reasons we think no such objection was made in

17   a way the Arizona courts could have understood it, and that no such issue is before us now."

18   *Clark*, 548 U.S. at 762.  The Court went on to state,

19          At no point did the trial judge specify any particular evidence that he
     refused to consider on the *mens rea* issue. Nor did defense counsel specify any
20   observation or other particular evidence that he claimed was admissible but
     wrongly excluded on the issue of *mens rea*, so as to produce a clearer ruling
21   on what evidence was being restricted on the authority of *Mott* and what was
     not. He made no "offer of proof" in the trial court; [footnote omitted]  and
22   although his brief in the Arizona Court of Appeals stated at one point that it
     was not inconsistent with *Mott* to consider nonexpert evidence indicating
23   mental illness on the issue of *mens rea*, and argued that the trial judge had
     failed to do so, ... he was no more specific than that....
24

25   *Id*. at 763.

26   Finally, the Court stated,

27          In sum, the trial court's ruling, with its uncertain edges, may have

28                                              - 5 -

1
2
3

restricted observation evidence admissible on *mens rea* to the insanity defense alone, but we cannot be sure.  But because a due process challenge to such a restriction of observation evidence was, by our measure, neither pressed nor passed upon in the Arizona Court of Appeals, we do not consider it.

4     *Id.* at 764-65.

5        Based on the Supreme Court's characterization of the evidence and claim, and the

6     Supreme Court's findings with respect to counsel's preservation of this evidence and claim

7     for appeal, Petitioner now argues that the fact that the Supreme Court found his observation

8     evidence claim was not preserved shows that his trial and appellate counsel were ineffective.

9                          **B.     Law Governing Ineffective Assistance of Counsel Claims**

10        "An ineffective assistance claim has two components: A petitioner must show that

11     counsel's performance was deficient, and that the deficiency prejudiced the defense.  To

12     establish deficient performance, a petitioner must demonstrate that counsel's representation

13     fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521

14     (2003) (internal citations and quotations omitted).  A deficient performance is one that is

15     "outside the wide range of professionally competent assistance." *Strickland v. Washington*,

16     466 U.S. 668, 690 (1984).  In order to show prejudice, Petitioner "must show that there is a

17     reasonable probability that, but for counsel's unprofessional errors, the result of the

18     proceeding would have been different. A reasonable probability is a probability sufficient to

19     undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

20                          **C.     Law Governing Habeas Review of State Court Decisions**

21        The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is

22     incarcerated based on a state conviction. With respect to any claims that Petitioner exhausted

23     before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the

24     Petition on those claims unless "a state court decision is contrary to, or involved an

25
26
27
28                                                - 6 -

1    unreasonable application of, clearly established Federal law"[2] or was based on an

2    unreasonable determination of the facts.  *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

3              **D.    Analysis**

4              As suggested above, the R&R recommends that this Court grant habeas relief to

5    Petitioner on Ground V.  R&R at 68-115.  Respondents filed objections to this conclusion.

6              As the R&R summarized, in his post-conviction relief Petition following direct

7    review, Petitioner exhausted this claim of ineffective assistance of counsel.  With respect to

8    exhaustion, the R&R recounted

9                  The PCR court rejected this claim, casting it as a claim that "Mr.
              Goldberg, *who* argued the appeal at both the state and federal level was
10            ineffective in failing to preserve the issue of whether the trial court erred in not
              considering observational evidence bearing on petitioner's *mens rea*."
11            (Exhibit AAAA, M.e. 3/15/07 at 11.)  The court went on to reason that the
              three dissenting justices had characterized the distinction between
12            observational evidence and other evidence as "novel" and concluded that "Mr.
              Goldberg was not ineffective in failing to raise an observational evidence
13            claim...[w]here arguably three of the best legal minds in our country ...[found]
              that petitioner preserved his claim."  (*Id.* at 12.)  The PCR court did not
14            address the prejudice from the alleged deficient performance.

15   Doc. 54 at 72.

16             Thus, this Court must defer to the state court's finding on cause unless it is contrary

17   to or an unreasonable application of federal law, or an unreasonable determination of the

18   facts.  *See Lockyer*, 538 U.S. at 71.  Because the state court did not reach prejudice, this

19   Court reviews Petitioner's claim of prejudice de novo.  *Lewis v. Mayle*, 391 F.3d 989, 996

20   (9th Cir. 2004).

21             **1.    Cause**

22             Despite the state court finding that counsel's performance was not deficient, the R&R

23   recommends that this Court find trial counsel's performance deficient.  Doc. 54 at 72-76.

24   First, the R&R concludes the state court applied either the law or the facts unreasonably

25

26   _____

27       [2]  Further, in applying "Federal law" the state courts only need to act in accordance
     with Supreme Court case law.  *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003)

28                                          - 7 -

when it relied on the dissent from the Supreme Court. *Id*. at 72. The R&R concludes that the majority opinion, which is the law of the case, held that counsel did not preserve the observational evidence claim, and that this Court is bound by this holding. *Id*. This Court agrees with that conclusion, and finds the state court's determination to the contrary of the Supreme Court's holding was unreasonable.

Respondents object and argue that the state court's decision was not unreasonable because the reality is that the United States Supreme Court created completely new law when it delineated *Mott* into three kinds of evidence. Doc. 55 at 3-4. Further, Respondents object and argue that counsel could not have been ineffective for failing to preserve this claim because such a claim under Arizona law did not exist before the Supreme Court's decision in *Clark*. *Id*. ("Clark's attorneys were not ineffective when they preserved a challenge to *Mott* to the United States Supreme Court, but did not separately preserve a then non-existent "observation evidence" claim.") While the Court recognizes that much of what Respondent argues appears to be technically true, the Court agrees with the R&R that the Supreme Court held the opposite, and this Court cannot conclude otherwise. Accordingly, these objections are overruled.

Next, the R&R rejects the state court's conclusion that the claim was "novel" and that trial counsel was not ineffective for failing to raise a novel claim. *Id.* at 73. Again, the R&R rejects the state court's conclusion because it relies on the dissent to reach this conclusion. *Id*. In other words, the majority decision did not find the distinction between the three kinds of evidence bearing on *mens rea* to be novel, and in fact held that these three distinctions had always been present under Arizona law. *Clark*, 548 U.S. at 760. Again, the Court agrees with the R&R that the state court's decision is contrary to the law (of the case) in relying on the dissent to find this claim to be novel.

Respondents object again arguing that the Supreme Court created the evidentiary distinctions discussed more fully below for the first time in *Clark*, and that counsel's objection on this issue was adequate under Arizona law as it existed at the time. Doc. 55 at

1    5–10.  To the extent this argument seeks to have this Court find that the Supreme Court

2    created new categories of mental disease evidence, that objection is overruled because the

3    Supreme Court already held that such categories always existed under *Mott*.  However, the

4    Court will consider Respondents more general objection that counsel's performance was not

5    ineffective.

6           Thus, the Court must consider whether counsel's performance fell below an objective

7    standard of reasonableness.  Starting with the appeal, counsel actually delineated similar

8    kinds of *mens rea* evidence in his opening brief to the Arizona Court of Appeals as

9    delineated by the Supreme Court.[3]  Specifically, counsel argued,

> It is recognized that the Arizona supreme court rejected a similar (but not identical) issue as raised here in *State v. Mott* [citation omitted].  However, contrary to the trial court's ruling herein, the *Mott* Court was not faced with the precise issue raised in this case, that being whether prohibiting consideration of *any evidence* reflecting upon a mentally ill criminal defendant's ability to form the necessary *mens rea* violates due process.

> In *Mott* the Court precluded expert testimony on the battered woman syndrome offered to show that the defendant could not form the applicable *mens rea*.  In this case the trial court not only refused to consider the expert testimony on this issue, but refused to consider *all* evidence indicative of [Clark's] mental illness and his inability to form the requisite *mens rea*.  This blanket refusal was actually contrary to *Mott* and violated [Clark's] due process right to present a defense. [citation omitted] The trial court therefore

_____

[3]  The Court notes that ineffective assistance of appellate counsel is Ground 7 of the amended petition, whereas ineffective assistance of trial counsel is Ground 5 of the amended petition.  The Court further notes that the R&R found that Ground 7 was procedurally defaulted and that Petitioner had not shown cause and prejudice to overcome his procedural default.  Doc. 54 at 37-41.  However, in analyzing cause, the R&R relied in part on there being no right to counsel in a post-conviction relief proceeding as a basis for saying that potential ineffective assistance of post-conviction relief counsel cannot be cause to overcome procedural default.  R&R at 39.  The Ninth Circuit Court of Appeals has affirmed this legal principle.  *See Martinez v. Schriro*, 623 F.3d 731 (9th Cir. 2010).  However, the United State Supreme Court has granted certiorari in *Martinez* and has not issued an opinion.  Therefore, the Court has reached the merits of this claim as if Petitioner had shown cause based on post-conviction relief counsel having been ineffective in failing to exhaust appellate counsel's alleged ineffectiveness.  Moreover, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

> violated [Clark's] right to present a defense because [the] court refused to consider *any evidence*, including the multiple testimonials of *lay* witnesses that [Clark] did not know what he was doing when acting out or that it was wrong, in deciding whether he could form the requisite *mens rea*.

Doc. 33-3 at 79-80.

Thus, initially it appears that counsel raised this issue on appeal.  Any deficiency, then, would have been in failing to preserve this claim in the trial court, which then prevented the Arizona Court of Appeals and United States Supreme Court from reaching the issue.  In finding counsel did not preserve the issue, both the Arizona Court of Appeals and the United States Supreme Court referenced that counsel failed to make an offer of proof.  Specifically, the Arizona Court of Appeals stated, "[a]side from the evidence offered to prove his insanity generally, Clark specified no evidence in his offer of proof that demonstrated he was not capable of knowing he was killing a police officer."  Doc. 33-3 at 196.  The United States Supreme Court framed the issue as follows

> [D]id Clark apprise the Arizona courts that he believed the trial judge had erroneously limited the consideration of observation evidence, whether from lay witnesses like Clark's mother or (possibly) the expert witnesses who observed him?  This sort of evidence was not covered by the *Mott* restriction, and confining it to the insanity issue would have been an erroneous application of *Mott* as a matter of Arizona law.  For the following reasons we think no such objection was made in a way the Arizona court could have understood it, and that no such issue is before us now.  We think the only issue properly before us is the challenge to *Mott* on due process grounds, comprising objections to limits on the use of mental-disease and capacity evidence.

*Clark*, 548 U.S. at 762.

The Court went on to explain how trial counsel failed, as quoted above,

> At no point did the trial judge specify any particular evidence that he refused to consider on the *mens rea* issue.  Nor did defense counsel specify any observation or other particular evidence that he claimed was admissible but wrongly excluded on the issue of *mens rea*, so as to produce a clearer ruling on what evidence was being restricted on the authority of *Mott* and what was not.  He made no "offer of proof" in the trial court... .

*Id.* at 763.

Thus, the question remaining before this Court is whether counsel's performance in

- 10 -

this regard fell below an objective standard of reasonableness.  In considering this question, the Court must consider what actions counsel actually took.  First, although both the Arizona Court of Appeals and the United States Supreme Court criticized counsel for failing to make an offer of proof, because this case was a bench trial, it appears the trial court actually let in all of the evidence, but then ruled it would not consider such evidence on the issue of *mens rea* because of *Mott*.  *Id.* at 762-63.  Specifically, the trial court stated,

> [R]ecognizing that much of the evidence that [the defense is] going to be submitting, in fact all of it, as far as I know...that has to do with the insanity could also arguably be made along the lines of the Mott issues as to form and intent and his capacity for the intent.  I'm going to let you go ahead and get all that stuff in because it goes to the insanity issues and because we're not in front of a jury.  At the end, I'll let you make an offer of proof as to the intent, the Mott issues, but I still think the supreme court decision is the law of the land in this state.

*Id.*

Further, the Supreme Court noted that, "defense counsel made no additional 'offer of proof' at the conclusion of the case, but preserved [Clark's] legal contentions by asking the court to consider all of the evidence presented in determining whether the state had proved its case."  *Id*. at 761 n. 32.  The Arizona Court of Appeals similarly noted, "the record shows that the trial court did not prevent Clark from presenting such evidence, despite our supreme court's decision to the contrary in *Mott*, even going so far as to permit him to make an offer of proof on the issue at the close of evidence."  Doc. 33-3 at 195.

As further evidence of the fact that the trial court actually let counsel present all of this lay and expert testimony at trial, the R&R summarizes the testimony going to *mens rea* at pages 87-105.  Doc. 54.  This testimony included the observations of 19 lay witnesses and 2 experts.  *Id*.  However, the R&R and both defense attorneys believe the trial court refused to consider all of this evidence on the issue of *mens rea*.  Doc. 54 at 84-85 (the Magistrate Judge stated, "For the reasons discussed herein, the undersigned finds that the presumption that the trial judge divined the law according to *Clark* and applied it has been overcome.")  Further the R&R concludes that the trial judge committed error in refusing to consider this

observational evidence on the issue of *mens rea*, but that the Arizona Court of Appeals could not find this error because counsel did not properly explain this claim. *Id.* at 84-86. Finally, agreeing with the Supreme Court, the R&R finds that had counsel correctly presented this claim to the Arizona Court of Appeals, the Court of Appeals would have correctly determined the nuances of *Mott*. *Id.* at 86. On this point, the United State Supreme Court stated,

> We therefore have no reason to believe that the court of Arizona would have failed to restrict their application of *Mott* to the professional testimony the *Mott* opinion was stated to cover, if Clark's counsel had specified any observational evidence he claimed to be generally admissible and relevant to mens rea.

*Clark*, 548 U.S. at 765 n. 34.

Against this record, first the Court finds that trial counsel was not ineffective for failing to make an offer of proof. Although both appellate courts reference counsel's failure to make an offer of proof, the reality of this record is that all of the evidence was admitted (but arguably not considered) by the trial court. Because all of counsel's witness' observations were in the record, there was no "excluded" evidence on which to make an offer of proof.[4] Thus, because Petitioner can point to no evidence that counsel should have

---

[4] Specifically, defense counsel explained in an interview as part of the post-conviction relief proceedings the following:

Q. Okay. Do you believe that you or David were ineffective for failing to preserve the observation evidence claim to the United States Supreme Court?

A. You know, I kind of disagree with the Supreme Court on this issue. ...The reason I brought those motions in limine with me is because it occurred to me under the State versus Bay case that a layperson's opinions and observations as to insanity was relevant. In all honesty, I thought I had preserved that issue as far as being able to bring in lay people to discuss mens rea and, in effect, to negate [Clark's] ability to premeditate and/or perceive that Officer Moritz was in fact a police officer versus an alien.

I'll tell you, when Judge Coker ruled, the effect of Judge Coker's ruling on the Mott issue for me was that I could no longer make that argument. ... But I thought by filing the pretrial motions I had preserved the observational evidence issue. But when he ruled that we could not bring in or discuss Mott

1    submitted via his offer of proof, Petitioner has failed to show counsel's conduct fell below

2    an objective standard of reasonableness.  *See Wiggins*, 539 U.S. at 521.

3

4    _____

               from the standpoint ... of negating premeditation --
5       Q.    But that's when you have to make an offer of proof.  You've made offers of
               proof before, right?
6       A.    Yes, I have.
7       Q.    So, if this is an appellate issue, I lost the motion, I'm going to make a[n offer]
               of proof to preserve the appeal.  So at the end of the trial, you say, Your
8              Honor, A, B, C would, this evidence would show that he didn't have the
               mental state to do this crime.
9       A.    Well, I think the problem there was this.  From my standpoint as well as David
10             Goldberg's   -- and, again, I cannot say that Dave and I had a specific
               conversation about this.  But I think we believed that by admitting evidence
11             such as the medical records, the testimony - - excuse me, the reports of Dr.
12             Moran, - - Dr. Moran did a very good job of outlining the background.  I mean,
               I obviously disagree with his opinion that he ultimately concluded, but he did
13             an excellent job of outlining the background information - -
14      Q.    He was very good for your case at some level.
15      A.    He was, because he outlined - - in fact, I mean most of the doctors, even Dr.
               Morenz commented he did an excellent job on developing, or setting forth the
16             history, the mental health history that [Clark] was involved in.
               And so once we had that and we presented that to Judge Coker, as well as, for
17             example, Title 36 transcripts, the prior testimony regarding competency, we
               thought the evidence itself spoke alone.
18      Q.    Yeah.
19      A.    In other words, it wasn't like we're going okay, judge, the offer of proof is the
               trial itself.  I mean we kind of thought - - my thinking was, you know, I
20             remember having a discussion about - - I do remember some kind of
21             discussion with David about do we have all the evidence in that we think we
               need in, and it was, yeah, based on this, based on this, I can't think of anything
22             else; can you? No, I can't either.  And that's where we left it.
23             So it wasn't an issue of - - I know what the argument is: Well, you could have
               made a specific offer of proof.  But it was kind of like, well, the evidence was
24             there.  It wasn't like we left out a piece of evidence.  It was, it was there; it was
25             just our, at least my feeling was Judge Coker was not going to let me argue,
               nor was he going to seriously consider that any of this evidence was going to
26             impact or allow us to ... create the defense.
     Doc. 35-2 at 57-60 (interview between counsel for Respondent and trial defense counsel
27   Bryon Middlebrook).

28                                              - 13 -

Thus, the second and final question presented to this Court on "cause" is whether counsel's representation fell below an objective standard of reasonableness for making all of his *mens rea* arguments in a group, rather that putting the trial court (and later the Arizona Court of Appeals) to the task of delineating whether it was refusing to consider (on the issue of *mens rea*) the lay and expert testimony as observation evidence, mental disease evidence, or capacity evidence.[5]  Preliminarily, in evaluating the conduct of counsel, the Court is concerned that an attorney, as much as he or she might want to, cannot make a judge explain his or her decision.  Thus, the attorney must accept the judge's decision and endeavor to abide by it.

In this case, all counsel submitted briefs on whether the trial judge could consider mental evidence to negate *mens rea*.  Doc. 33-1 at 75.  The trial court then ruled that it could not consider such evidence.[6]  Defense counsel then stated (in a later interview as part of the

---

[5]  As noted above, the United States Supreme Court noted that counsel made this global *mens rea* argument finding, "defense counsel made no additional 'offer of proof' at the conclusion of the case, but preserved [Clark's] legal contentions by asking the court to consider all of the evidence presented in determining whether the state had proved its case." *Id*. at 761 n. 32.

[6]  As quoted above, the trial court made the following ruling.
> [R]ecognizing that much of the evidence that [the defense is] going to be submitting, in fact all of it, as far as I know...that has to do with the insanity could also arguably be made along the lines of the Mott issues as to form and intent and his capacity for the intent.  I'm going to let you go ahead and get all that stuff in because it goes to the insanity issues and because we're not in front of a jury.  At the end, I'll let you make an offer of proof as to the intent, the Mott issues, but I still think the supreme court decision is the law of the land in this state.

The trial court the further clarified as follows.
> The unpublished federal opinion, which gave a relief under writ of habeas corpus, I don't think is the law of the land in the state of Arizona, but I will certainly allow you to preserve the issue; you can argue, or not argue, but you can make an offer of proof at the conclusion of the case, but I don't think it's the law of the land at this point.  And then at least that preserves it on appeal if something happens later on down the road.  But right now I'm bound by the

post-conviction relief proceedings), "I'll tell you, when Judge Coker ruled, the effect of Judge Coker's ruling on the Mott issue for me was that I could no longer make that argument."  *See* footnote 4.  Thus, trial defense counsel raised this issue generally with the trial court, and then felt bound to abide by the trial court's ruling that he could not use this evidence to negate *mens rea* other than to preserve the underlying evidence for appeal.

Defense counsel then raised the issue again to the Arizona Court of Appeals, which ruled, "Clark specified no evidence in his offer of proof that demonstrated he was not capable of knowing he was killing a police officer."  Doc. 33-3 at 196.  Because there was no additional evidence to raise in an offer of proof, effectively the Arizona Court of Appeals held that there was no observational evidence on which to base a determination that Petitioner could not form the requisite *mens rea*.  Again, although there is evidence in the record that suggests all of the Arizona courts believed *Mott* prohibited them from considering even observational evidence going to *mens rea*,[7] the majority of the United States Supreme Court held that the Arizona courts, given the opportunity, would correctly limit *Mott*'s restrictions, so this Court is presuming that in this alternative holding the Arizona Court of Appeals properly applied *Mott*.[8]

---

supreme court decision in Mott and we will be focusing, as far as I'm concerned, strictly on the insanity defense.
Doc. 33-1 at 84-85.

[7] For example, the Arizona Court of Appeals next sentence was, "Even assuming such evidence was sufficient,  the trial court was bound by the supreme court's decision in *Mott*, which held that, 'Arizona does not allow evidence of a defendant's mental disorder short of insanity either as an affirmative defense or to negate the *mens rea* element of a crime.'" Doc. 33-3 at 196.

[8] *But see Clark*, 548 U.S. at 780 (J. Breyer concurring in part and dissenting in part) ("And though I accept the majority's reading of the record, I remain concerned as to whether the lower courts, in setting forth and applying [*Mott*] focused with sufficient directness and precision upon the distinction [among these kinds of evidence].  Consequently, I would remand this case so that Arizona's courts can determine whether Arizona law, as set forth in *Mott* and other cases, is consistent with the distinction the Court draws and whether the trial

Thus, because there was no offer of proof to make beyond the evidence admitted at trial, and because counsel simply abided by the trial court's ruling that counsel's use of this evidence was limited to the insanity issue, the Court finds counsel's conduct did not fall below an objective standard of reasonableness at the trial court level.

As discussed above, in reading the briefs before the Arizona Court of Appeals, it appears counsel raised the "lay witness" testimony going to *mens rea* issue on appeal. However, the United States Supreme Court state, with respect to the appeal,

> although [Petitioner's] brief in the Arizona Court of Appeals stated at one point that it was not inconsistent with *Mott* to consider nonexpert evidence indicating mental illness on the issue of *mens rea*, and argued that the trial judge had failed to do so, ... he was no more specific than that....

*Clark*, 548 U.S. at 763.

Accordingly, the final area where counsel may have been ineffective is failing to be "more specific" to the Arizona Court of Appeals regarding his argument that it was not inconsistent with *Mott* to consider lay evidence pointing to mental illness on the issue of *mens rea*. *See id.* In other words, did this lack of factual specificity to support this legal theory fall below an objective standard of reasonableness.

Raising every possible argument on appeal is not a prerequisite to rendering constitutionally effective assistance. *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983). Thus, it follows that counsel not raising a particular argument with detailed factual specificity would not automatically be ineffective assistance of counsel.

In the appeal in this case, counsel raised seven claims. Doc. 33-3 at 178-198. One of those claims was Petitioner's "ability to form *mens rea*" in which he raised the challenge to *Mott* detailed above and further advocated that *Mott* be completed overturned. *Id*. at 195-197. Given the extent of the arguments made by counsel on appeal, the Court cannot conclude that failing to raise the "observation evidence" claim with the apparent underlying

_____

court so applied Arizona law here.").

factual specificity that the United States Supreme Court required rose to the level of ineffective assistance of counsel.[9]  Counsel making these arguments with the level of detail raised in the briefs and considered by the Arizona Court of Appeals did not fall below an objective standard of reasonableness.  Therefore, the Court will reject the R&R's finding that Petitioner has shown "cause" under *Strickland* on his ineffective assistance of counsel claim.

## 2.   Prejudice

Because the Court has not found an error by counsel that fell below an objective standard of reasonableness, the Court need not reach prejudice.  Moreover, even if the Court had found "cause" under *Strickland*, because of the overwhelming evidence of Petitioner's guilt, and specifically that he possessed the requisite *mens rea* to commit the crime, the Court would not find prejudice.  Specifically, the R&R recounted,

> [A]s noted by the Arizona Court of Appeals, there was significant evidence indicating Petitioner did possess the requisite *mens rea*, including evidence of: (1) Petitioner's professed anger with police officers, and fantasies of retaliating; (2) Petitioner's efforts to attract a police officer the night of the killing; (3) the use of a weapon at close range [showing intent to kill]; (4) the victim's evasive movements as shown by the bullet trajectory and witness statements [showing the officer was shot in the back while moving away]; (5) obvious indications of the victim's status as a police officer, including his uniform and marked patrol car and Petitioner having pulled over in response to the emergency lights and siren; and (6) Petitioner's flight from the scene.

Doc. 54 at 41.

Thus, even if trial and/or appellate counsel were ineffective in failing to preserve the observation evidence claim as detailed by the United States Supreme Court, Petitioner was not prejudiced because weighing the observation evidence of Petitioner's mental condition

---

[9]  The Court has considered this argument presuming that counsel in fact erred.  In other words, the Court has not relied on the dissent from the Supreme Court's opinion which concluded that counsel committed no error.  *Clark*, 548 U.S. at 781-82 (J. Kennedy dissenting) ("The [majority] is wrong, too, when it concludes the issue cannot be reached because of an error by Clark's counsel."  "The [majority] refuses to consider the key part of Clark's claim because his counsel did not predict the Court's own invention.  It is unrealistic, and most unfair, to hold that Clark's counsel erred in failing to anticipate so novel an approach.")

against the above evidence of Petitioner's actions, the trier of fact would have found Petitioner intentionally killed a police officer.  Accordingly, because the result of the proceeding would not have been different, Petitioner was not prejudiced.  *Strickland*, 466 U.S. at 694 (to show prejudice, Petitioner must show that but for counsel's unprofessional errors the result of the proceeding would have been different).

## IV.   Conclusion

For the reasons stated above,

**IT IS ORDERED** that the R&R (Doc. 54) is accepted in part and rejected in part. The objections are overruled to the extent indicated above.  Upon this Court's de novo review of part of Ground V,[10] the Court finds that counsel was not ineffective.  Accordingly, the amended petition for writ of habeas corpus (Doc. 17) is denied with prejudice, and the Clerk of the Court shall enter judgment accordingly.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[10] And because of the possible impact of *Martinez*, Ground VII.

1    **IT IS FURTHER ORDERED** that pursuant to Rule 11 of the Rules Governing

2    Section 2254 Proceedings, in the event Petitioner files an appeal, the Court grants in part and

3    denies in part the certificate of appealability.  As to Ground V and VII, the Court finds that

4    Petitioner has stated a claim of constitutional magnitude as to the following theories of

5    ineffective assistance of counsel: (1) "trial counsel was ineffective in failing to preserve the

6    issue of observational evidence," (2) "defendant was not competent for the entire trial and

7    trial counsel...failed to request a re-evaluation; that defendant's competency deteriorated

8    during the trial and counsel...failed to request re-evaluation, " (3) "appellate counsel ... was

9    ineffective because he failed to raise the issue of competency in the appeal and failed to

10   preserve the observational evidence at trial for appellate review and filed to this issue in the

11   appeal;" and the Court grants the certificate of appealability as to these theories.[11]  The Court

12   denies the certificate of appealability as to the remainder of Ground V and all other Grounds.

13          DATED this 19th day of March, 2012.

14

15

16          James A. Teilborg
            United States District Judge

17

18

19

20

21

22

23

24

25

26

27   [11] *See* Doc. 17 at 42.

28                                    - 19 -